802 P.2d 15

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Charles GALLEGOS,**
**Defendant–Appellant.**

No. 11857.

Court of Appeals of New Mexico.

Sept. 11, 1990.

Certiorari Denied Nov. 26, 1990.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

**MINZNER, Judge.**

This case concerns the constitutionality of the new mental illness and competency statutes, NMSA 1978, §§ 31–9–1 to –1.5 (Cum.Supp.1989), and the proper procedure thereunder. Defendant appeals from an order of the trial court finding by a preponderance of the evidence that he committed the crimes of child abuse resulting in great bodily harm and aggravated battery, finding that he is dangerous, and ordering him to be detained by the Health and Environment Department (HED) in a secure, locked facility pursuant to Section 31–9–1.-5(D)(1). The order from which the appeal is taken is sufficiently final to allow an appeal. *State v. Webb*, 111 N.M. 78, 801 P.2d 660 (Ct.App.1990). We affirm.

Defendant devotes the bulk of his brief to arguing the sufficiency of the evidence. Most of defendant's arguments go to the weight of the evidence and urge us to find the witnesses not credible or to credit one version of the events over another. On appeal from decisions of the fact finder in criminal cases, where the trial standard is beyond a reasonable doubt, we view the evidence in the light most favorable to the state, resolving all conflicts and indulging all inferences in favor of the decision below. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). Conflicts in the evidence are for the fact-finder to resolve, *id.*, and the appellate court does not reweigh the evidence. *State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App.1974).

■ To support the finding that defendant committed child abuse resulting in great bodily harm, the state presented evidence that defendant was baby-sitting for two young girls, aged five and two. When their mother returned home, the two-year-old had a bad immersion burn on one foot, meaning that her foot had been immersed in hot liquid long enough to burn it so that the boundary between the area burned and the area not burned was an absolutely straight line. The burn occurred in the bathtub; evidence was presented that the water came out of the tap at a certain temperature and that someone would have had to hold the child's foot in the water for thirty seconds for the water to have burned her as severely as it did. Four years after the incident, at the hearing, the child showed her foot to the judge. Her mother testified that the child's foot still hurt, she did not want to wear shoes, and her toenails were susceptible to cracking and infection.

To be sure, the evidence as to exactly how the child was burned was conflicting. Her older sister told several stories. According to one, she gave her sister the bath resulting in the burn. According to another, defendant gave the child the bath while the older sister was in her own bedroom. Pursuant to this version, the older sister heard the younger child screaming. The older child claimed she did not tell anyone this version earlier because defendant threatened her.

It was up to the trial judge in this case to decide which version to believe. *See State v. Lankford.* In light of the evidence that the burn was caused by immersing the child's foot in water for thirty seconds, we believe the trial court acted well within its proper limits in finding that defendant was the one who burned the child and in apparently discounting much of the older child's testimony and prior statements, including some that were entirely fantastic (*e.g.*, that not only did defendant burn the child's foot in the water, but he also burned the child with matches; the older sister knew this because she heard the matches lighting from the next room; after the burning, defendant put ice cream on the child's foot and made the older sister lick it off).

■ To support the finding that defendant committed aggravated battery in an incident that occurred in his own home after this incident, the state presented a prior statement of defendant's brother Daniel. According to the statement, Daniel told his mother that defendant was entertaining a woman their mother did not like.

The woman was the mother of the children defendant had been babysitting, and defendant's mother did not like her because she had precipitated the trouble resulting from the child abuse incident and which initially involved an allegation of sexual abuse. When defendant's mother went to confront him, defendant was drunk and began yelling at her. Daniel went to protect his mother and the two began fighting. Defendant went into another room to get a knife and threatened to kill his mother. Daniel intervened and got stabbed in the hand.

Daniel's testimony at the hearing was different than his earlier statement. At the hearing, he testified that he was taunting defendant and pushing him around. Thus, according to Daniel, defendant was probably scared that Daniel was going to hurt him, so defendant stabbed him, although he really didn't mean to. Defendant's mother testified at the hearing that Daniel was beating up defendant and defendant acted in self-defense. She also testified, however, that defendant was special to her as he was the baby of the family.

■ Defendant objected at the hearing to the introduction of Daniel's prior statement but does not raise it as an issue on appeal. In passing and without citation to authority, he argues that the trial court erred in admitting the statement. We need not consider issues that are raised in this way. *See Wilburn v. Stewart*, 110 N.M. 268, 794 P.2d 1197 (1990). In any event, the brother having testified to a completely different version at the hearing and one inference being that he changed his story to help out his family and keep his brother out of jail, the statement was admissible under SCRA 1986, 11–801(D)(1)(a). *See State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct.App.1978).

The evidence that defendant was angry and went into another room to get a knife in order to kill his mother allowed the court to infer that defendant knew that knives could inflict serious injury. The fact that defendant used such a weapon allowed the court to infer that defendant intended to injure when he used the knife on his brother during a fight. *See State v. Gammill*, 102 N.M. 652, 699 P.2d 125 (Ct.App.1985).

Finally, defendant contends the evidence was insufficient to support a finding that he is dangerous. His argument includes two predicate arguments that have no basis in this case. The first predicate argument is that we do not know the theory on which the trial court found defendant guilty of child abuse; if the court found that defendant negligently left the child in the care of her older sister for a bath and the older sister negligently burned the child, such a finding would not support a conclusion of dangerousness. The second predicate argument is that the fact of guilt ought not be equated with dangerousness. In making these arguments, defendant relies on testimony that he was a peaceful person in whose care many witnesses would and did leave their children.

■ Defendant is incorrect about the first predicate argument. The indictment specified that the subsection of the statute on which the state would seek conviction was NMSA 1978, Section 30–6–1(C)(2) (Repl.Pamp.1984). This subsection proscribes cruelly torturing, confining, or punishing. Thus, the trial court could not have found defendant guilty on the basis of his negligence in allowing the older sister to bathe the younger child. *See State v. Trivitt*, 89 N.M. 162, 548 P.2d 442 (1976). This necessarily means that the trial court found facts leading to the finding, by a preponderance of the evidence, that defendant held the child's foot in the water for thirty seconds, resulting in a burn that still causes problems four years later.

■ The second predicate argument is more troublesome. We agree with defendant that the facts supporting a determination that defendant committed a crime ought not in all cases result in a finding of dangerousness, because guilt is not the equivalent of dangerousness for purposes of the statute. The statute defines "dangerous" for purposes of the statutory plan. *See* § 31–9–12(C) (as used in Sections 31–9–1 to –1.5, " 'dangerous' means that, if released, the defendant presents a serious threat of inflicting great bodily harm on

another or of violating Section 30–9–11 or 30–9–13 NMSA 1978"). The fact of incompetency also is not the equivalent of dangerousness for purposes of the statute. *See id.*

However, the fact of guilt under the circumstances of a particular case may permit the trial court to find dangerousness. *Cf. State v. Wilson,* 97 N.M. 534, 641 P.2d 1081 (Ct.App.1982) (the circumstances surrounding a crime may be relied on as aggravating circumstances for purposes of increasing a sentence). When the trial court has found that a defendant has cruelly treated a two-year-old child by holding her foot in hot water for half a minute and has injured his brother with a knife in the course of a family argument, the trial court may properly draw an inference that defendant is dangerous. In this case, the evidence that defendant is dangerous conflicted with defendant's evidence showing he was peaceful and kind to children as well as defendant's version of the family argument. The trial court resolved the conflict against defendant. *State v. Lankford.* The evidence was sufficient to support that decision.

Section 31–9–1.5(D) provides in part:

If the court finds by a preponderance of the evidence that the defendant committed a crime and has previously made a finding that the defendant is dangerous pursuant to Subsections B and C of Section 31–9–1.2 NMSA 1978:

(1) the defendant shall be detained by the health and environment department in a secure, locked facility;

(2) the defendant shall not be released from that secure facility except pursuant to an order of the trial court which committed him;

(3) significant changes in the defendant's condition, including but not limited to trial competency and dangerousness,

shall be reported in writing to the court, state and defense; and

(4) the trial court shall review the issues of trial competency and dangerousness at least every two years * * *.

■ Defendant next contends that the trial court erred in failing to follow the statute regarding the sequence in which it was to hold hearings and make findings. In particular, defendant contends that the sequence followed by the trial court deprived him of a right to a forensic evaluation on the issue of dangerousness.[1]

A review of the statutory scheme and the unique facts of this case will demonstrate why defendant has shown no right to relief. The statutes at issue were passed in response to *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), in which the United States Supreme Court held that indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial violates due process and equal protection. The statutes serve a dual purpose. On the one hand, they provide for dismissal of the charges when the state cannot prove guilt by a preponderance of the evidence, thereby giving an incompetent defendant a limited opportunity to prove his or her innocence and recognizing the unfairness of indefinitely holding nonmeritorious criminal charges against such a defendant. On the other hand, they provide for the detention of a dangerous, incompetent defendant for the maximum duration of the potential sentence, thereby protecting society, when a preponderance of the evidence indicates that defendant committed the crime. *State v. Werner,* 110 N.M. 389, 796 P.2d 610 (Ct.App.1990). To these two purposes, a third may be added: the statutes provide an orderly and progressive method of evaluating and treating defendants who can be returned to competency within a reason-

**1.** HED supports defendant's request for reversal on this issue. Although HED was not a party below and has not moved to intervene in this case or brief it as an amicus, it wrote a letter to the district judge, which has been made a supplemental exhibit in this case. HED's position is that prior to committing defendant, the trial court was required to hold various hearings preceded by various evaluations conducted pursuant to Sections 31–9–1 through –1.5. Because HED is neither a party nor an amicus, we do not address its arguments. We note that the position it advances does not aid defendant, who argues for prehearing evaluations on the issue of dangerousness and not amenability to treatment.

able amount of time and a fair method of detaining incompetent, dangerous defendants who cannot.

Thus, in the usual case, the following steps will be taken. First, prior to trial someone will raise the issue of defendant's competency to stand trial and defendant will be evaluated, probably by experts at the Las Vegas Medical Center (LVMC). Following, a hearing on competency shall be held within sixty days. §§ 31–9–1; 31–9–1.1. If the trial court finds defendant incompetent, two choices are available: the court can determine whether defendant should be committed in accordance with civil law, § 31–9–1.2(A), or it can make a finding that defendant is dangerous and proceed in accordance with the remainder of the mental competency statutes. § 31–9–1.2(B) & (C).

If the court proceeds in accordance with the statutory plan, it commits defendant for treatment and the statute provides that the person treating defendant shall within thirty days report to the court about defendant's disability, his amenability to treatment to render him competent, and his prospects for attaining competency within one year. § 31–9–1.2(D). Within ninety days of the order for treatment, the court is to hold a hearing on the progress defendant is making toward competency if he is not already competent. § 31–9–1.3(A). If the trial court finds that defendant is making progress, it may either continue or modify the original treatment order. § 31–9–1.3(D). If the court finds that defendant is not making progress and it is not probable that he will attain competency within a year, it is to proceed in accordance with the remainder of the statutory plan. § 31–9–1.3(E).

Section 31–9–1.4 gives the state three choices when faced with an incompetent, dangerous defendant who is not likely to attain competency within a year. The state can proceed on a civil basis, § 31–9–1.4(C); it can release defendant and dismiss the charges, § 31–9–1.4(B); or it can set the matter for hearing pursuant to Section 31–9–1.5 in order to have defendant detained more permanently, § 31–9–1.4(A). To pro-

ceed to have defendant detained more permanently, the state must prove to the trial court by a preponderance of the evidence that defendant committed the crime or crimes charged. § 31–9–1.5(A). If the state does not prove its case, the court dismisses the charges without prejudice, but the state may still proceed with an involuntary civil commitment. § 31–9–1.5(B). If the state does prove its case but defendant is not found to be dangerous, the same result is obtained. § 31–9–1.5(C). If the state does prove its case and the trial court "has previously made a finding that the defendant is dangerous," see § 31–9–1.5, he is to be detained by HED in a secure, locked facility for a period of time no greater than the maximum length of his potential sentence, but the issues of trial competency and dangerousness are to be reviewed at least every two years. § 31–9–1.5(D)(4).

In this case, the trial court held a hearing pursuant to Section 31–9–1.5(A), the state proved that defendant committed two crimes and was dangerous, and the court committed defendant to HED pursuant to Section 31–9–1.5(D). However, due to the unusual circumstances of this case, HED never had the opportunity to evaluate defendant's amenability to treatment and never advised the court on the likelihood of his restoration to competency or other matters concerning potential treatment.

The unusual circumstances of this case were that defendant pled guilty to child abuse resulting in great bodily harm, and in exchange the state dropped the sexual abuse and aggravated battery charges. He was sentenced to nine years in the penitentiary. Defendant later moved to withdraw his plea on the ground that he was incompetent both at the time of the plea and at present. Mental health experts who were familiar with him at the penitentiary were of the opinion that defendant had extremely limited intelligence, he was very compliant and susceptible to suggestion, and he needed to be protected from abuse by other prisoners. The only witness who testified at the hearing on the motion to withdraw was a private psychologist who had evaluated defendant while he

was at the penitentiary. This witness opined that, based on his review of the other reports, his independent testing and interview with defendant, and the facts that defendant was of such limited intelligence that he did not know what the "range of and nature of possible pleas, verdicts and dispositions" were and he did not know what the words "alibi," "legal strategy," and "defense" were, defendant was not competent to enter the plea when he did and was not competent to stand trial at the current time. The state did not present any evidence. The court allowed withdrawal of the plea and, without objection from either side, found that defendant would not attain competency within a year. Accordingly, the matter was immediately scheduled for a hearing pursuant to Section 31–9–1.5(A) without further evaluation or reports. At that hearing, the evidence was admitted that we have previously found sufficient to prove defendant committed the crimes and was dangerous. Defendant objected to hearing the issue of dangerousness without having the benefit of other evaluations and reports.

On appeal, defendant contends that he was entitled to the various evaluations provided by statute on the issue of dangerousness and that the court erred in first finding defendant dangerous at the Section 31–9–1.5 hearing. The latter argument is based on the language of Section 31–9–1.5(D), stating that defendant may be detained for the length of the potential sentence if the court has "previously" made a finding of dangerousness pursuant to subsections (B) and (C) of Section 31–9–1.2. We disagree with defendant for two reasons.

■ First, there is very specific language in Section 31–9–1.2 allowing the trial court to make a finding of dangerousness "at any time." § 31–9–1.2(B). We read statutes as a whole so that all portions are given effect. *Grudzina v. New Mexico Youth Diagnostic & Dev. Center,* 104 N.M. 576, 725 P.2d 255 (Ct.App.1986). We

also consider the purpose of the statute. *State v. Werner.* In the context of the competency statutes, the finding of dangerousness is a prerequisite to the applicability of the portions of the statute allowing defendant to be detained for a longer period of time. Thus, the court must make a finding of dangerousness prior to the detention authorized by Section 31–9–1.5, but it need not have made such a finding at a prior hearing.

■ Second, we do not agree with defendant that the evaluations to be made prior to a Section 31–9–1.5 hearing are designed to provide information on defendant's dangerousness. The statute contemplates two evaluations prior to a Section 31–9–1.5 hearing. The first is done solely to make an initial determination of competency. § 31–9–1.1. The second is done pursuant to a commitment for treatment designed to help defendant attain competency or evaluate his prospects for becoming competent within a year. §§ 31–9–1.2 & –1.3. There is nothing in this scheme indicating that the evaluations are for the purpose of assessing defendant's dangerousness, although if the evaluations reveal information on this topic, of course it can be used by the court.

To the extent that defendant seeks an evaluation pursuant to Section 31–9–1.2, that position is inconsistent with the position defendant has taken since attempting to withdraw his plea. Defendant has always maintained that he was incompetent to plead, is incompetent to stand trial, and will be incompetent for the foreseeable future. Because the purpose of Section 31–9–1.2 is to provide treatment to defendant until he attains competency and to evaluate his prospects, the court below cannot be faulted for not ordering an evaluation pursuant to this section. *Cf. State v. Boeglin,* 105 N.M. 247, 731 P.2d 943 (1987) (criminal defendants may make a strategic choice not to have the trial court instruct on lesser offenses).[2]

2. We note that nothing prevents HED from attempting to provide treatment to defendant until he attains competency. Under Section 31–9– 1.5(D)(4), the court is required to reevaluate defendant's competency and dangerousness at least every two years. If HED is of the opinion

Finally, defendant contends that the competency statute deprives him of due process and equal protection. We agree with defendant that the New Mexico statutes do not provide all the protections recommended by the American Bar Association. *See, e.g.,* ABA Criminal Justice Mental Health Standards 7–4.13(b)(i)(F) (1989) (requiring specific findings about the extent to which defendant's competency affected the outcome of the hearing); & (G) (providing for a jury determination of issues raised at the hearing). However, this in itself does not raise a constitutional issue. *See State v. Montoya,* 91 N.M. 425, 575 P.2d 609 (Ct.App.1978); *State v. Tanton,* 88 N.M. 5, 536 P.2d 269 (Ct.App.), *rev'd on other grounds,* 88 N.M. 333, 540 P.2d 813 (1975).

Most of defendant's other constitutional arguments are based on a misreading of the statute. For example, defendant complains that the statute prevented him from arguing against the admissibility of his brother's statement and against a police officer's opinions, yet the statute relaxes evidentiary rules only to the extent that it allows the admission of hearsay on secondary matters such as chain of custody and authentication. To the extent defendant did not argue against admissibility of matters he thought were inadmissible or did not make appropriate objections to matters he thought were objectionable, the fault was his. There is nothing in the statute on its face that precludes defendant's attorney from acting as an advocate at a Section 31–9–1.5 hearing.

Defendant also appears to argue that it is unconstitutional to treat incompetent defendants differently than competent defendants. However, due process requires them to be treated differently. The conviction of an accused person while that person is legally incompetent violates due process, and thus incompetent defendants cannot be brought to trial in the same manner as competent defendants. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

This court recently noted that it is permissible to treat dangerous incompetents who have committed crimes differently than dangerous incompetents who have not committed crimes. *State v. Werner.* Defendant argues we should revisit *Werner* because, under it, mental state need not be proved, thereby leading to a situation in which similarly situated defendants may be held under Section 31–9–1.5 for different periods of time, depending on the caprice of the prosecutor in charging or not charging a specific intent crime. Defendant misreads *Werner.* The fact that defendant is not permitted to defend on the basis of either insanity or inability to form specific intent does not mean that the court does not have to find the elements of the crime by a preponderance of the evidence. Indeed, in our review of the sufficiency of the evidence here, we held that there was evidence supporting a finding of specific intent to injure. Defendant could have, and did, present facts to the trial court indicating that he did not specifically intend to injure because the stabbing was an accident. The only thing *Werner* prohibits is defendant attempting to defend on the basis that he lacked capacity to commit the crime or form specific intent. Thus, there is no basis in fact for this portion of defendant's argument.

CONCLUSION.

We reject defendant's challenges to the mental illness and competency statutes, §§ 31–9–1 to –1.5, and the procedures applied by the district court herein. We conclude that the evidence is sufficient to support the findings and disposition of the district court. Accordingly, the order of the trial court is affirmed.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.

that defendant can attain competency before that, it could treat him and then ask the court to proceed with trial under Section 31–9–1.-5(D)(4)(a).