2001-NMCA-050

29 P.3d 538

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard CHORNEY, Defendant–
Appellant.**

No. 21,769.

Court of Appeals of New Mexico.

June 27, 2001.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Richard Chorney appeals the use of a habitual offender enhancement to extend his criminal incompetency commitment. We reverse.

## BACKGROUND

{2} Defendant was convicted of shoplifting, aggravated assault with a deadly weapon, negligent use of a weapon, and unlawful carrying of a deadly weapon, together with being a felon in possession of a firearm. Shortly after Defendant's convictions, the State filed a supplemental information charging Defendant as a three-felony habitual offender under NMSA 1978, § 31–18–17 (1993). Before sentencing, Defendant was charged separately with new offenses. Before he could be sentenced for the crimes of which he was convicted or tried on the new charges, all criminal proceedings were suspended for a determination of competency pursuant to the Mental Illness and Competency Act (the Act), NMSA 1978, §§ 31–9–1 to –1.5 (1988, as amended through 1999).

{3} The district court determined that Defendant was incompetent to proceed and dangerous. After a Section 31–9–1.5 hearing, the court committed Defendant to the Las Vegas Medical Center for treatment for a term of up to ten years and six months, consisting of eighteen months for the underlying charge of aggravated assault, one year for firearm enhancement, and an eight-year enhancement because Defendant was a habitual offender.

## DISCUSSION

### A. Standard of Review

{4} Because we interpret the language of Section 31–9–1.5, our review is de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Our task is "to

ascertain and effectuate the intent of the legislature" as to whether the mandatory habitual offender enhancement can be invoked to enhance a Section 31–9–1.5 commitment. *State v. Anaya*, 1997–NMSC–010, ¶ 28, 123 N.M. 14, 933 P.2d 223. "[C]riminal statutes providing for more [than the basic] punishment should ... be strictly construed." *Id.* ¶ 30.

## B. The Contentions

{5} Once committed under Section 31–9–1.5(D)(1) of the Act,

> the defendant shall not be released from that secure facility except pursuant to an order of the district court which committed him or upon expiration of the period of time equal to the maximum sentence to which the defendant would have been subject had the defendant been convicted in a criminal proceeding[.]

Section 31–9–1.5(D)(2).

{6} Defendant contends Section 31–9–1.5(D)(2) subjected him to a "maximum sentence" of only two and one-half years, that is, the eighteen-month sentence for aggravated assault and the one-year firearm enhancement. He argues that legislative silence on the matter requires that we presume the Legislature did not intend the habitual offender statute to apply to defendants committed under the Act. *See Anaya*, 1997–NMSC–010, ¶ 31, 123 N.M. 14, 933 P.2d 223 (stating that legislative silence in Section 31–18–17 and the DWI statute in question was "the strongest evidence that the legislature did not intend the habitual offender sentences ... to apply") (emphasis omitted); *Swafford v. State*, 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991) (stating that "the legislature has an obligation to state its intentions as clearly as possible" in the area of criminal punishment enhancement); *see also State v. Begay*, 2001–NMSC–002, ¶¶ 4–9, 130 N.M. 61, 17 P.3d 434 (stating the *Anaya* analysis controlled). In addition, Defendant argues that if we find the statutes ambiguous, we must apply the rule of lenity. *See id.* ¶ 7.

{7} Further, quoting from Justice Minzner's concurrence in *State v. Rotherham*, 122 N.M. 246, 266, 923 P.2d 1131, 1151, Defendant argues that the Act provisions must be "narrowly tailored to serve [the Legislature's] purpose." Defendant argues that extending the term of incarceration based on prior offenses reflects a penal, pretrial detention goal, amounting to punishment that conflicts with the Act's purpose of treating a defendant.

{8} Conversely, the State asks us to decide the issue by looking at the words and meaning of Section 31–9–1.5 in combination with sentencing authority statutes. *See* NMSA 1978, §§ 31–18–15 (1999), –16 (1993), –17 (1993). The State relies on the words of Section 31–9–1.5(D)(2): "maximum sentence to which the defendant would have been subject had the defendant been convicted in a criminal proceeding." Section 31–18–15(A)(6) establishes the basic sentence of eighteen months imprisonment for fourth degree felonies such as aggravated assault with a deadly weapon, NMSA 1978, § 30–3–2(A) (1963). That sentence shall be increased one year if a firearm is used. *See* § 31–18–16(A). If the defendant has been convicted of three prior felonies, the basic eighteen months sentence must be increased by eight years, not to be "suspended or deferred." Section 31–18–17(D).

{9} According to the State, when these sentencing statutes are read together, the ordinary meaning of the words and the only reasonable interpretation of the statutes is that a defendant's "maximum sentence" in Section 31–9–1.5(D)(2) includes a basic sentence and any required enhancements. Looking at the evidence and the sentencing statutes, the district court determined Defendant would have received a maximum sentence to include an eight-year enhancement had he been convicted. Thus, the State concludes, the sentencing statutes are plainly written, and the result in this case was reasonable and legislatively intended.

{10} The State further points out that the jury determined Defendant committed aggravated assault using a firearm, requiring the court to impose an additional one-year enhancement. Defendant has conceded that the firearm enhancement applies, and attacks only the eight-year enhancement. The State argues that there is no rational basis on

which to distinguish between the two enhancements when interpreting the language of Section 31–9–1.5(D)(2).

{11} The State also argues that no legislative purpose supports exclusion of the habitual offender enhancement from a commitment under the Act. The Act has a legislative purpose to protect an incompetent defendant from indefinite and unjust commitment to a mental health institution without due process of law and to protect society from dangerous criminals. The State asserts the "maximum sentence" under the Act is one, not of imprisonment, but to provide a proper time period in which to carry out the Act's unique caretaker status with a definite conclusion of commitment and liberty safeguards. Under the Act, Defendant must be released if he is determined to be competent or no longer dangerous.

**C. The Result**

{12} " '[D]angerous' [under the Act] means that, if released, the defendant presents a serious threat of inflicting great bodily harm on another or of violating Section 30–9–11 [criminal sexual penetration] or 30–9–13 [criminal sexual contact of a minor]." Section 31–9–1.2(D). The State agrees that "the legislature has provided for the criminal commitment of only the most serious violent offenders" under Section 31–9–1.5(A). The "maximum sentence" requirement in Section 31–9–1.5(D)(2) addresses the possible dangerousness of an incompetent defendant and provides the outer limits for commitment for the purpose of protecting society. It is based on specific crimes the Legislature believes identify dangerous defendants, namely: "a felony that involves the infliction of great bodily harm on another person; a felony that involves the use of a firearm; aggravated arson ...; criminal sexual penetration ...; or criminal sexual contact of a minor, ... and [entry of] a finding that the defendant remains incompetent to proceed and remains dangerous[.]" Section 31–9–1.5(D).

■■■ {13} A critical inquiry in this case, therefore, is whether the Legislature intended the habitual offender enhancement to be employed even where its application bears no reasonable relationship with dangerousness as defined in the Act. We think not. The habitual offender statute has as its primary purpose to deter recidivism. *State v. Linam,* 93 N.M. 307, 309, 600 P.2d 253, 255 (1979). We have no reason to believe the intent behind the habitual offender statute is to enhance a basic sentence because a felon with prior convictions is dangerous, as that term is defined in the Act.

■■ {14} A habitual offender enhancement can be based on one or more prior fourth degree felonies involving no dangerous conduct, *see, e.g.,* NMSA 1978, § 30–16–31 (1971) (forgery of a credit card), or can be based on one or more prior murder convictions. Where the sole reason for maximum sentence criminal commitment to a secure and locked facility is the dangerousness of the defendant, it is reasonable to conclude that the "maximum sentence" under Section 31–9–1.5(D)(2) can consist only of basic sentences for the crimes that trigger commitment, and any enhancements of those basic sentences that are expressly based on inherently dangerous criminal conduct as set out in Section 31–9–1.5(D) or defined in Section 31–9–1.2.

{15} The State argues that because a defendant's criminal history is important in a treating physician's determination of dangerousness, "the same prior criminal history should be similarly important in determining the length of time necessary for appropriate treatment." Further, the State argues, the fact that a defendant "has committed prior criminal acts certainly indicates a pattern of dangerous behavior deserving of commitment for the longest possible time in order to provide treatment to him and protection to the public." Thus, the State's position is that the habitual offender enhancement should be applied in all cases. We see no such legislative intent.

■■■ {16} The eight-year enhancement in this case has a more punitive than treatment purpose. The habitual offender statute is "highly penal in nature," and its application must be interpreted narrowly. *State v. Lujan,* 76 N.M. 111, 117, 412 P.2d 405, 408 (1966). The enhancement is not necessarily imposed based on prior dangerous conduct of Defendant, nor is it justified on the basis that it is necessary, no matter what the circumstances of the prior felony or felonies, to protect the public from a dangerous person.

{17} Whether the criminal commitment is two and one-half years, or ten and one-half years, a defendant must at some time be released from criminal commitment under the Act. Whatever the commitment term, at the end of the term under the Act, the State should evaluate whether to continue the commitment of a dangerous defendant through the civil commitment process pursuant to the Mental Health and Developmental Disabilities Code. NMSA 1978, §§ 43–1–1 to –25 (1976, as amended through 1999). As the State points out, "[a]ny longer confinement for treatment must, therefore, depend upon a civil commitment." The State should always determine the appropriate placement of a dangerous defendant at the end of a criminal commitment of any length.

{18} Both the habitual offender statute and the Act are silent as to whether the maximum sentence intended under Section 31–9–1.5(D)(2) includes a habitual offender enhancement. We see no clear legislative intent that the habitual offender enhancement be incorporated into the Act's "maximum sentence" language. It is reasonable to presume in this case the Legislature did not intend to authorize the imposition of a habitual offender enhancement. *Anaya*, 1997–NMSC–010, ¶ 31, 123 N.M. 14, 933 P.2d 223; *Swafford*, 112 N.M. at 16, 810 P.2d at 1236.

{19} Although "maximum sentence to which the defendant would have been subject" in Section 31–9–1.5(D)(2) seems plain and might be read as the State does in tandem with Sections 31–18–15 through—17, we nevertheless do not find the language and statute intermixture " 'free from all ambiguity and ∴ crystal clear in … meaning.' " *Anaya*, 1997–NMSC–010, ¶ 28, 123 N.M. 14, 933 P.2d 223 (quoting *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994)). It is our responsibility to "select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the legislature." *Id.* ¶ 29. We do so without resort to the rule of lenity.

{20} Imposition of the habitual offender enhancement to commit Defendant beyond his basic sentence and firearm enhancement was not intended by the Legislature and is not within the purpose of the Act. The habitual offender statute cannot be used to compute the maximum sentence under Section 31–9–1.5(D)(2), and Defendant's eight-year enhancement was improper. Because we reverse based on the foregoing analysis, we need not address any other grounds.

{21} In deciding competency issues, we should always be mindful of *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), in response to which the Act was passed. *Rotherham*, 122 N.M. at 252–53, 923 P.2d at 1137–38; *State v. Gallegos*, 111 N.M. 110, 114, 802 P.2d 15, 19 (Ct.App.1990). *Jackson* forbids the indefinite warehousing of an incompetent defendant. 406 U.S. at 731, 92 S.Ct. 1845. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738, 92 S.Ct. 1845. Dangerousness is an element necessary to sustain a commitment of an incompetent person. *Id.* at 736, 92 S.Ct. 1845. A criminal defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738, 92 S.Ct. 1845. The Act sets the outer limits of that time period. We think it follows from *Jackson* that a person such as Defendant in this case cannot be criminally committed under a sentence enhancement unless the conduct invoking the enhancement is a specific marker of dangerousness as determined and defined by the Legislature.

## CONCLUSION

{22} We reverse with instruction to the district court to vacate the eight-year enhancement of Defendant's commitment based on Section 31–18–17.

{23} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, and CELIA FOY CASTILLO, Judges.