This memorandum opinion was not selected for publication in the New Mexico Appellate Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.              **A-1-CA-36368**

**RICKY QUINTANA,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Gerald E. Baca, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Public Defender
J.K. Theodosia, Assistant Public Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}    Defendant Ricky Quintana appeals the district court's order of commitment on the ground that the district court improperly extended the period of commitment based on aggravating circumstances from fifteen years to twenty years. We affirm.

**BACKGROUND**

**The Facts Leading to Appeal**

{2}    Michael Grube (Decedent) was found dead on the floor of Defendant's residence. The State and Defendant stipulated that "Defendant . . . took the life of Michael Grube on or about April 11, 2003, and amputated Mr. Grube's penis, scrotum and testes." Defendant was charged with an open count of murder and tampering with evidence.

{3}    Roughly three years later, in June 2006, the parties stipulated that (1) Defendant was incompetent to stand trial and dangerous; (2) there was not a substantial probability that he would attain competency within a reasonable period of time; (3) there was clear and convincing evidence that he committed second degree murder; (4) aggravating circumstances existed; and (5) the court should enter an order of commitment for a period not to exceed eighteen years—a term based on the fifteen-year sentence for second-degree murder with an additional three years for aggravated circumstances. Defendant has been housed at the New Mexico Behavioral Health Institute from the date of arrest to the present.

{4}    Approximately eight years later, Defendant was found competent to proceed to trial. However, shortly before trial was to begin, questions about Defendant's competency to stand trial were raised during a motion hearing. The district court vacated the trial setting and instead held an evidentiary hearing in April 2016 pursuant to NMSA 1978, Section 31-9-1.5 (1999) to determine the sufficiency of the evidence for the two charges in this case: an open count of murder and tampering with evidence. After the hearing, the parties stipulated that the evidence was clear and convincing that Defendant had committed the crime of second-degree murder.

{5}    At a commitment hearing in February 2017, the district court took additional evidence regarding mitigating and aggravating circumstances. Based on evidence at the April 2016 and February 2017 hearings, the district court found that

4.    The Defendant committed the murder of [Decedent] with extreme viciousness and brutality, as evidenced by testimony presented at the evidentiary hearing on April 11th, 2016 and the commitment hearing on February 24th, 2017; to include the near decapitation of the body, the removal of the genitals, the stabbing of the anus, as well as the numerous wounds to [Decedent]'s head and torso;

. . . .

6.    . . . Defendant committed the murder of [Decedent] while in a state of psychosis as evidenced by expert testimony at the evidentiary hearing on April 11th, 2016 and the commitment hearing on February 24th, 2017. Based on evidence at those same hearings, . . . Defendant had also previously attacked his brother while in a state of psychosis. If released without

3

> supervision, there is a danger that . . . Defendant would be medically non-compliant and his psychosis would return, thereby creating a threat of harm to the community[.]

The district court also found that both "[t]he brutality and viciousness with which this crime was committed" and "[the] threat to community safety" were "valid aggravating factor[s] by which to increase Defendant's commitment to the New Mexico Behavioral Health Institute (NMBHI)[.]" Based on these findings, the district court ordered Defendant to be committed to NMBHI for fifteen years (the basic sentence for second-degree murder) plus five years for aggravating circumstances. *See* NMSA 1978, § 31-18-15(A)(4) (2016) (stating that the sentence for a second-degree felony resulting in death is fifteen years); NMSA 1978, § 31-18-15.1(A) (2009) (permitting alteration of a basic sentence up to one-third based on aggravating or mitigating circumstances).

**The New Mexico Mental Illness and Competency Code (NMMIC)**

{6}    The NMMIC has two purposes: "to protect an incompetent defendant from indefinite and unjust commitment to a mental health institution without due process of law and to protect society from dangerous criminals." *State v. Chorney*, 2001-NMCA-050, ¶ 11, 130 N.M. 638, 29 P.3d 538. Upon a determination by the district court "that there is not a substantial probability that the defendant will become competent to proceed in a criminal case within a reasonable period of time . . . , the district court may" conduct criminal commitment proceedings. Section

4

31-9-1.4. The process for criminal commitment under the NMMIC was described in *State v. Rotherham*, 1996-NMSC-048, ¶ 17, 122 N.M. 246, 923 P.2d 1131. "For criminal commitment, the State must establish by clear and convincing evidence that the defendant committed the criminal act charged." *Id.* "If the State . . . prove[s] that the defendant committed the criminal act charged, the court is required to determine whether the defendant is dangerous." *Id.*; *see* § 31-9-1.5(C)). Section 31-9-1.2(D) states that, in part, " 'dangerous' means that, if released, the defendant presents a serious threat of inflicting great bodily harm on another." "If the court determines by clear and convincing evidence that [the] defendant committed the crime charged and [is] . . . dangerous, the defendant must be detained in a 'secure, locked facility,' Section 31-9-1.5(D)(1), for a period not to exceed the maximum sentence available had he been convicted in a criminal proceeding, Section 31-9-1.5(D)(2)." *Rotherham*, 1996-NMSC-048, ¶ 17.

{7}    "The court is further required to conduct a hearing every two years on the issues of competency and dangerousness" and to continue with criminal proceedings if, at any point, the defendant is determined to be competent. *Id.*; *see* § 31-9-1.5(D)(4).

5

## DISCUSSION

**{8}** Defendant argues that the enhanced sentence based on aggravating circumstances is not permitted under the NMMIC. He does not argue that the commitment order is otherwise erroneous.

**{9}** Our review of this statutory construction question is de novo. *See Chorney*, 2001-NMCA-050, ¶ 4. "Our task is to ascertain and effectuate the intent of the [L]egislature as to whether the [aggravated circumstances] enhancement can be invoked to enhance a Section 31-9-1.5 commitment." *Chorney*, 2001-NMCA-505, ¶ 4 (internal quotation marks and citation omitted). We strictly construe criminal statutes "providing for more than the basic punishment." *Id.* (internal quotation marks and citation omitted). When construing statutes, we "begin by looking at the language of the statute itself[,]" although "[t]he plain meaning rule must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources." *State v. Smith*, 2004-NMSC-032, ¶ 9, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted).

**{10}** Section 31-9-1.5(D)(1), (2) provides that, upon the district court's finding that the defendant committed the crime, and is incompetent and dangerous,

> (1)    the defendant shall be detained by the department of health in a secure, locked facility; [and]
> (2)    the defendant shall not be released from that secure facility except pursuant to an order of the district court which committed him or upon expiration of *the period of time equal to the*

6

*maximum sentence to which the defendant would have been subject had the defendant been convicted in a criminal proceeding*;

(emphasis added). To the extent Defendant argues that the phrase "maximum sentence" in Section 31-9-1.5(D) refers only to the basic sentences set out in Section 31-18-15, we disagree.

{11} The Criminal Sentencing Act, NMSA 1978, §§ 31-18-1 to -26 (1977, as amended through 2016), plainly distinguishes between basic sentences and enhanced or maximum sentences. The Legislature made clear that a sentence may consist of a "basic" sentence plus additional terms of imprisonment to be imposed after assessment of additional factors. For example, Section 31-18-15(A) defines the "basic sentences" for felonies and Section 31-18-15(B) provides for alteration of those basic sentences: "The appropriate basic sentence of imprisonment shall be imposed upon a person convicted and sentenced pursuant to Subsection A of this section, unless the court alters the sentence pursuant to the provisions of the Criminal Sentencing Act." *See* § 31-18-15.1 ("The judge may alter the basic sentence as prescribed in Section 31-18-15" upon certain findings); § 31-18-17 (providing that a "basic sentence shall be increased" by given periods for habitual offenders). Our cases similarly distinguish between "basic" and "maximum" sentences. *See, e.g.*, *State v. Guerra*, 2001-NMCA-031, ¶ 3, 130 N.M. 302, 24 P.3d 334 ("[T]he *maximum sentence* that may be imposed upon a youthful offender convicted of a non-capital felony is the *basic sentence* prescribed by . . . Section

7

31-18-15 . . . *plus any enhancements* specifically made applicable to youthful offenders by the Legislature." (emphasis added)); *State v. Gonzales*, 1981-NMCA-086, ¶ 15, 96 N.M. 556, 632 P.2d 1194 (discussing basic and maximum sentences).

**{12}** Further, our Court in *Chorney* recognized that the use of "maximum sentence" in the NMMIC encompassed not just the basic sentence set forth in Section 31-18-15(A) but also could include enhancements based on a defendant's dangerousness. *See Chorney*, 2001-NMCA-050, ¶¶ 12, 14. In particular, this Court held that "[t]he 'maximum sentence' . . . addresses the possible dangerousness of an incompetent defendant and provides the outer limits for commitment for the purpose of protecting society[,]" *id.* ¶ 12, and that "it is reasonable to conclude that the 'maximum sentence' . . . can consist . . . of basic sentences for the crimes that trigger commitment, and *any enhancements of those basic sentences that are expressly based on inherently dangerous criminal conduct* as set out in Section 31-9-1.5(D) or defined in Section 31-9-1.2." *Chorney*, 2001-NMCA-050, ¶ 14 (emphasis added).

**{13}** In *Chorney*, the specific question before this Court was "whether the Legislature intended the habitual offender enhancement to be employed even where its application bears no reasonable relationship with dangerousness as defined in the [NMMIC]." 2001-NMCA-050, ¶ 13. The district court had enhanced the defendant's term of commitment beyond the basic sentence because the

8

defendant was a "three-felony habitual offender." *Id.* ¶¶ 2, 13; Section 31-18-17 (providing for enhancement of a basic sentence where the defendant has prior felony convictions). The district court had also enhanced the defendant's term by one year for use of a firearm; on appeal, the defendant did not object to the firearm enhancement and this Court did not comment on the propriety of that enhancement. *Id.* ¶ 10; *see* § 31-18-16(A) ("When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence . . . shall be increased by one year[.]"). As to the habitual offender enhancement, this Court observed that "[t]he eight-year enhancement in this case has a more punitive than treatment purpose" and held that the Legislature did not intend that a habitual offender enhancement apply where it did not relate to the NMMIC's treatment or protective purposes. *Id.* ¶¶ 14-16. Because the enhancement there was not related to conduct that was "a specific marker of dangerousness," this Court vacated the enhancement of the defendant's commitment. *Id.* ¶¶ 21-22; *cf. State v. Lopez*, 2009-NMCA-112, ¶ 8, 147 N.M. 279, 219 P.3d 1288 (stating that *Chorney* held that "application of a habitual offender enhancement to extend the duration of commitment was improper because it did not relate to provisions of the NMMIC").

**{14}** Here, the district court increased the commitment term by five years based in part on the "extreme viciousness and brutality" of Defendant's conduct. Generally,

9

a district court may properly consider the brutality of a defendant's conduct in assessing aggravating circumstances. *See State v. Kurley*, 1992-NMCA-105, ¶ 7, 114 N.M. 514, 841 P.2d 562 ("[T]he brutality of the crime was . . . a circumstance surrounding the crime that could be considered by the trial court in aggravating [the] defendant's sentence."). "The manner in which a crime is committed can bear on a number of factors relevant to sentencing, including [the] defendant's propensity to repeat the crime, the potential for harm resulting from the crime, and [the] defendant's potential for rehabilitation." *Id.* These considerations are also highly relevant to the commitment of an incompetent defendant under the NMMIC, one purpose of which is "to protect society from dangerous [defendants]." *Chorney*, 2001-NMCA-050, ¶ 11; *see Rotherham*, 1996-NMSC-048, ¶ 53 (noting that "the [s]tate cannot release into society an incompetent defendant who has demonstrated a capacity for serious, violent conduct"). Moreover, in the context of commitment proceedings, the circumstances surrounding the alleged criminal conduct, and prior violent conduct may demonstrate dangerousness. *See State v. Gallegos*, 1990-NMCA-104, ¶¶ 12-13, 111 N.M. 110, 802 P.2d 15 ("[T]he fact of guilt under the circumstances of a particular case may permit the trial court to find dangerousness."); *cf. State v. Landgraf*, 1996-NMCA-024, ¶ 23, 121 N.M. 445, 913 P.2d 252 ("A sentence may be properly aggravated based on events surrounding the crimes and the nature of a

10

defendant's threat to society."). In *Gallegos*, where "the [district] court . . . found that a defendant ha[d] cruelly treated a two-year-old child by holding her foot in hot water for half a minute and ha[d] injured his brother with a knife in the course of a family argument," the Court concluded that "the [district] court [could] properly draw an inference that [the] defendant [wa]s dangerous." 1990-NMCA-104, ¶ 13. In that case, the same evidence supported both the district court's finding that the defendant committed child abuse and aggravated battery and its finding that the defendant was dangerous. *Id*. ¶¶ 5, 6, 12.

{15}     Defendant contends that his enhanced sentence cannot be justified on the ground that the circumstances surrounding the crime demonstrated that Defendant is dangerous because "dangerousness is a separate—and predicate finding— required before the incompetent defendant may be committed for treatment." Defendant provides no support for the idea that, having determined that a defendant is dangerous as a predicate to commitment, the district court may not also consider the circumstances of the defendant's conduct, and their bearing on defendant's future dangerousness, in determining the term of commitment. Contrary to Defendant's argument, *Chorney* held that a defendant's dangerousness relates directly to the term of commitment, stating, "The 'maximum sentence' . . . addresses the possible dangerousness of an incompetent defendant and provides the outer limits for commitment for the purpose of protecting

11

society." 2001-NMCA-050, ¶ 12. We conclude that the enhancement here was congruent with the NMMIC because the brutality of the conduct and prior violent conduct by Defendant are "specific marker[s] of dangerousness." *Id.* ¶ 21.

{16} Defendant makes one final argument: he argues that aggravating circumstances relate to a defendant's culpability and that a commitment term enhancement based on such culpability is inappropriately punitive and violates due process. The problem with this argument is that it fails to recognize that, in the criminal sentencing context, all sentences are based on the defendant's culpability. In other words, "as applied to sane defendants, all sentences of imprisonment, whether measured by an extended term or not, have as their goals punishment and deterrence." *People v. Pastewski*, 647 N.E.2d 278, 283 (Ill. 1995). "If the punitive character of the [enhancement] precludes its use in determining the maximum commitment period for an [incompetent defendant]," as Defendant argues, "then one must also question whether the regular, nonextended sentencing statutes may be used for that purpose." *Id*. However, Defendant rightly does not argue that commitment for the period of the basic sentence is improperly punitive, as our Supreme Court has stated that "commitment pursuant to Section 31-9-1.5 is not punishment[.]" *State v. Adonis*, 2008-NMSC-059, ¶ 9, 145 N.M. 102, 194 P.3d 717 (alteration, internal quotation marks, and citation omitted)). Hence, so long as the enhancement is consistent with the NMMIC under *Chorney*, the enhancement of a

12

sentence under Section 31-18-15.1 also is not punitive in the commitment context. *See Rotherham*, 1996-NMSC-048, ¶ 53 ("The fact that a criminal defendant is detained for a period of time does not inexorably mean the State has imposed punishment. Rather, because the State seeks to treat an incompetent and to protect the community from danger, detention serves a regulatory rather than a punitive function." (citation omitted)); c*f. Pastewski*, 647 N.E.2d at 282 (stating that the district court's application of an enhancement "in determining an [incompetent defendant's] maximum period of commitment [does not] impermissibly alter[] the nature of his confinement, or introduce[] into the commitment an invalid punitive purpose"). We are also not persuaded by Defendant's due process argument which is not developed and lacks merit. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not develop an unclear argument on behalf of a party).

**CONCLUSION**

{17} For the foregoing reasons, we affirm the district court's order of commitment.

{18} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

13

_____

**JULIE J. VARGAS, Judge**

_____

**JENNIFER L. ATTREP, Judge**

14