The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published.  The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**

**Filing Date:  March 25, 2021**

**NO. S-1-SC-37570**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**RICKY QUINTANA,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Gerald Baca, District Judge**

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**BACON, Justice.**

{1} This appeal requires us to resolve whether the Legislature intended that the determination of a maximum term of criminal commitment under Section 31-9-1.5(D)(2) of the New Mexico Mental Illness and Competency Code (NMMIC), NMSA 1978, §§ 31-9-1 to -1.6 (1988, as amended through 1999), may include enhancement due to aggravating circumstances under Section 31-18-15.1 of the Criminal Sentencing Act (CSA), NMSA 1978, §§ 31-18-12 to -26 (1977, as amended through 2020). The Court of Appeals applied *State v. Chorney*, 2001-NMCA-050, ¶¶ 11-12, 130 N.M. 638, 29 P.3d 538, in determining that the enhancement in this case serves the legislative purposes underlying the NMMIC. *State v. Quintana*, 2019-NMCA-030, ¶¶ 15-16, 446 P.3d 1168. The Court of Appeals consequently affirmed the ruling of the district court that extended Defendant Ricky Quintana's term of commitment based on aggravating circumstances from fifteen years to twenty years. *Id.* ¶ 2. We affirm and issue this opinion to clarify that a term of commitment under Section 31-9-1.5 may be increased under Section 31-18-15.1 due to aggravating circumstances that bear a direct relation to a defendant's dangerousness and that are supported by clear and convincing evidence.

1

## I. BACKGROUND

{2}     In 2003, the decedent's body was discovered lying on the living room floor of Defendant's residence. The decedent had been stabbed multiple times, and his body had been subjected to mutilation, both before and after death. Defendant was charged with an open count of murder and tampering with evidence.

{3}     In 2006, the parties filed stipulations including that Defendant remained incompetent to stand trial and remained dangerous, that clear and convincing evidence supported the charge of second-degree murder against Defendant, and that aggravating circumstances existed warranting the addition of three years to his statutory fifteen-year term of commitment.

{4}     In 2014, following his ensuing commitment to the New Mexico Behavioral Health Institute (NMBHI) subject to attainment of competency, pursuant to Section 31-9-1.5, "[D]efendant was found competent to stand trial[,] . . . and criminal proceedings resumed." However, defense counsel raised competency concerns prior to trial, and in 2016 "the parties again stipulated that . . . [D]efendant was incompetent and dangerous as defined by Section 31-9-1.2."

{5}     An evidentiary hearing was held to determine the sufficiency of the evidence for commitment pursuant to Section 31-9-1.5. Following the hearing, the district court acquitted Defendant of tampering with evidence and "found that clear and

2

convincing evidence existed to show that . . . [D]efendant committed the crime of second degree murder." A subsequent evidentiary hearing was held pursuant to Section 31-18-15.1, at which additional evidence was presented on both aggravating and mitigating circumstances.

{6}     Following the second evidentiary hearing, the district court entered an order of commitment pursuant to Section 31-9-1.5 enhancing Defendant's fifteen-year term by five years, for a total commitment period at NMBHI of twenty years. This term of commitment "represent[ed] the maximum time that . . . Defendant would have been subject had . . . Defendant been convicted of the [charged] offense[]."

{7}     The district court based its order of commitment on findings by clear and convincing evidence from both hearings relating to two "valid aggravating factor[s]." First, the district court found that the murder had been committed with extreme viciousness and brutality, including "the near decapitation of the body, the removal of the genitals, the stabbing of the anus, as well as the numerous wounds to [the decedent's] head and torso." Second, the court found that Defendant represented a threat to community safety because, "[i]f released without supervision, there [wa]s a danger that Defendant would be medically non-compliant and his psychosis would return[.]" Evidence had been presented at the hearings that Defendant had been in a state of psychosis when committing the murder charged and when previously

3

attacking another victim in a separate incident, and that Defendant was not reliable to take his antipsychotic medications without supervision.

{8} Defendant appealed on the ground that enhancing a term of commitment based on aggravating circumstances is not permitted under the NMMIC. *Quintana*, 2019-NMCA-030, ¶¶ 2, 9. The Court of Appeals held that a maximum term of commitment under the NMMIC can include an enhancement that is invoked by "'specific marker[s] of dangerousness'" as determined and defined by the Legislature. *Id.* ¶¶ 16-17 (alteration in original) (quoting *Chorney*, 2001-NMCA-050, ¶ 21). The Court of Appeals concluded that the brutality of Defendant's conduct and his history of prior violent conduct were such markers of dangerousness, and the Court affirmed the district court's order of commitment. *Id.* ¶¶ 16, 18.

{9} Pursuant to Rule 12-502 NMRA, Defendant petitioned this Court for certiorari, which we granted. The parties agree that the central issue before this Court is the legislative intent underlying a maximum term of criminal commitment under Section 31-9-1.5(D)(2).

{10} We affirm the Court of Appeals and hold that the Legislature intended for Section 31-18-15.1 to be applicable in determining a maximum term of commitment under Section 31-9-1.5 where aggravating and mitigating factors bear directly on a defendant's dangerousness. We further hold that the enhancement of a term of

4

commitment imposed under the NMMIC must meet the same clear and convincing evidentiary standard that is required for commitment under Section 31-9-1.5(D).

## II.  DISCUSSION

### A.  The Legislature Lawfully Intended for the CSA to Be Applied in Determining a Maximum Term of Commitment Under the NMMIC

### 1.  Standard of review

{11}  "This case presents an issue of statutory construction, which we review de novo." *State v. Barela*, 2021-NMSC-001, ¶ 5, 478 P.3d 875.

{12}  Our guiding principle when construing statutes is "to determine and give effect to legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (internal quotation marks and citation omitted). A statute's plain language is "the primary indicator of legislative intent." *State v. Young*, 2004-NMSC-015, ¶ 5, 135 N.M. 458, 90 P.3d 477 (internal quotation marks and citation omitted). "Under the plain meaning rule of statutory construction, when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (internal quotation marks, alteration, and citation omitted).

{13}  "In addition to looking at the statutory language, we also consider the history and background of the statute[, and w]e examine the overall structure of the statute and its function in the comprehensive legislative scheme." *State v. Smith*, 2004-

NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citations omitted). "[A] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." *Id.* (alteration in original) (internal quotation marks and citation omitted). "In considering the statute's function in relation to related statutes passed by the Legislature, whenever possible . . . we must read different legislative enactments as harmonious instead of as contradicting one another." *Barela*, 2021-NMSC-001, ¶ 6 (omission in original) (internal quotation marks and citation omitted).

**2.    Section 31-9-1.5(D)(2) is unambiguous and lawfully allows application of Section 31-18-15.1 to enhance a term of criminal commitment**

{14}    Defendant argues that Section 31-9-1.5 is unclear in not specifically defining *maximum sentence* and in not specifically addressing *aggravation*. Defendant also argues that aggravation of a criminal sentence is inherently punitive and related to culpability and thus "not contemplated" to enhance a term of criminal commitment. Defendant as well argues that aggravating a term of commitment "intended for [Defendant's] treatment to competency" misapplies *Chorney*. Finally, Defendant argues that the Legislature has failed to address whether a jury must "hear the question of aggravating factors" before a judge may enhance an order of

6

commitment. This legislative silence, Defendant asserts, indicates a lack of legislative intent to permit any aggravation of a term of commitment. We address these arguments in turn.

**a.     Section 31-9-1.5(D)(2) is clear under plain language and context analysis**

{15}     The NMMIC has a legislative purpose "to protect an incompetent defendant from indefinite and unjust commitment to a mental health institution without due process of law and to protect society from dangerous criminals." *Chorney*, 2001-NMCA-050, ¶ 11. Section 31-9-1.5 of the NMMIC governs evidentiary hearings to determine the sufficiency of the evidence for commitment of an incompetent defendant who has been charged with a felony that involves infliction of great bodily harm or with other enumerated felonies. Section 31-9-1.5(D) governs such hearings in which the district court finds by clear and convincing evidence that the defendant did commit the alleged felony and enters a finding that the defendant remains incompetent to stand trial and remains dangerous. For a felony that involves infliction of great bodily harm, "'dangerous' means that, if released, the defendant presents a serious threat of inflicting great bodily harm on another." Section 31-9-1.2(D).

{16}     Section 31-9-1.5(D)(2) mandates that the duration of a term of criminal commitment shall be "the period of time equal to the maximum sentence to which

7

the defendant would have been subject had the defendant been convicted in a criminal proceeding." This plain language requires the court in a Section 31-9-1.5 hearing to determine the length of the maximum sentence that would have been reached had the committed felony been adjudicated in a criminal proceeding. Such a criminal sentence would necessarily be reached under the CSA, as the legislated mechanism for determining sentences from criminal proceedings. *See* § 31-18-13(A).

{17}   The CSA encompasses all sentencing provisions for criminal convictions under the laws of New Mexico, except where otherwise provided. *See id*. Section 31-18-15 specifies the basic sentence for each enumerated, noncapital felony. Section 31-18-15.1 governs the alteration of a basic criminal sentence due to mitigating or aggravating circumstances. Upon a determination that aggravating circumstances exist, a judge may alter a basic sentence by increasing the length of the sentence by up to one-third. Section 31-18-15.1(B), (G).

{18}   Aggravation or mitigation of a basic criminal sentence is a normal and appropriate component of the CSA when the district court finds qualifying circumstances surrounding a criminal offense. *See, e.g.*, *State v. Fuentes*, 1994-NMCA-158, ¶¶ 19-21, 119 N.M. 104, 888 P.2d 986. As such, calculating the hypothetical *maximum* sentence for a particular defendant under the CSA would

8

include an enhanced sentence where aggravating circumstances exist and where the judge appropriately increases the basic sentence by up to one-third. *See* § 31-18-15.1(B), (G).

{19} We presume that the Legislature was aware of the framework and terminology of the CSA when it enacted the NMMIC. *See State v. Marquez,* 2008-NMSC-055, ¶ 7, 145 N.M. 1, 193 P.3d 548 ("When the Legislature enacts a statute, we presume that it is aware of existing statutes."); *accord. Inc. Cnty. of Los Alamos v. Johnson*, 1989-NMSC-045, ¶ 4, 108 N.M. 633, 776 P.2d 1252 ("We presume that the [L]egislature is well informed as to existing statutory and common law . . . when it enacts a new statute."). As such, we presume that the Legislature did not use the term *maximum sentence* where it in fact meant *basic sentence*. *See* § 31-9-1.5(D)(2). As noted by the Court of Appeals, the CSA plainly distinguishes between the provisions describing basic sentences in Section 31-18-15 and those describing "enhanced or maximum sentences" in Section 31-18-15.1. *Quintana*, 2019-NMCA-030, ¶ 12. The fact that the Legislature is directing the use of a calculation of a maximum *criminal sentence* to set a *term of commitment* does not change the calculation itself. Thus, the language of Section 31-9-1.5(D)(2) clearly indicates that determination of a term of criminal commitment should correspond to the maximum

9

sentence that would have been reached under the CSA, including potential enhancement based on aggravating circumstances.

{20} As the essential and default framework for criminal sentencing in New Mexico, the CSA would only be inapplicable to such a determination as a matter of statutory construction if the NMMIC indicated accordingly. For example, the NMMIC would only need to further define "maximum sentence" in Section 31-9-1.5(D)(2) or to address aggravation specifically if those were issues to be treated differently under the NMMIC than under the CSA. As we discuss below, the *Chorney* Court held that certain enhancements under the CSA would not apply in determining a term of commitment under Section 31-9-1.5 if those enhancements were not based on the defendant's dangerousness. *See* 2001-NMCA-050, ¶ 20. In that case, the *Chorney* Court concluded that the habitual offender enhancement could not be used to increase a term of commitment because the purpose of the habitual offender statute did not align with the purpose of Section 31-9-1.5(D). *Id.* ¶¶ 13-14, 20. To wit, the habitual offender statute was aimed at reducing recidivism, not protecting society from dangerous conduct. *Id.* ¶¶ 13-14. For this reason, the habitual offender statute was an exception to the general rule that Section 31-18-15.1 may be applied under the NMMIC where the aggravating circumstances of the incompetent defendant under Section 31-9-1.5(D) are based on dangerousness. *Id.*

10

{21}     Even if the plain language of Section 31-9-1.5 were ambiguous, the statutory language in question manifests clear policy underpinnings. "Maximum sentence," which contemplates aggravation, is consistent with legislative intent for the duration of a term of commitment to be as long as constitutionally permissible. *See* § 31-9-1.5(D)(2); *State v. Rotherham*, 1996-NMSC-048, ¶ 23, 122 N.M. 246, 923 P.2d 1131 ("[A]s long as [incompetent defendants] remain dangerous, the State has an interest in committing them to protect the defendants and the public."). Such legislative intent serves the State's compelling interests "to provide care to its citizens when necessary" and "to provide its citizenry a safe community in which to live." *Id.* ¶ 52. These compelling interests arise, respectively, from the State's parens patriae powers and its police power. *Id.*

{22}     As we next discuss, this Court concluded in *Rotherham* that the NMMIC is constitutional in correlating the duration of a term of commitment with the duration of a maximum criminal sentence when safeguards exist to protect against the constitutional violations identified in *Jackson v. Indiana*, 406 U.S. 715 (1972). *See Rotherham*, 1996-NMSC-048, ¶ 60 (holding it would be unconstitutional to commit an incompetent defendant "for more than a 'reasonable period of time' . . . necessary to determine whether [the defendant] will be rendered competent to stand trial in the foreseeable future" (quoting *Jackson*, 406 U.S. at 733)). Such safeguards include

11

continued treatment to achieve competency, a hearing conducted at least every two years regarding trial competency and dangerousness, and continuation of the criminal process if at any point the defendant regains competency, consistent with Section 31-9-1.5. *See id.* ¶ 34.

{23}     For the foregoing reasons, Defendant's argument as to the NMMIC's lack of clarity fails.

**b.     Enhancing a term of commitment under Section 31-9-1.5 comports with *Rotherham***

{24}     In *Rotherham*, in addition to the conclusion discussed above, this Court established the constitutionality of the NMMIC as a comprehensive statutory scheme. *See id.* ¶ 62. The *Rotherham* Court noted that the NMMIC was enacted subsequent to *Jackson*, which had established greater constitutional protections for incompetent defendants against indefinite and unreasonable commitment. *See id.* ¶¶ 13-15. Whereas the *Rotherham* Court had no occasion to address enhancing a term of commitment, the case stands for the proposition that the NMMIC satisfies *Jackson* in its protections for incompetent defendants. *See id.* ¶¶ 15, 28, 40, 60; *accord*, *State v. Chavez*, 2008-NMSC-001, ¶ 15, 143 N.M. 205, 174 P.3d 988.

{25}     Defendant's argument suggests that a court applying Section 31-9-1.5 cannot consider aggravating circumstances, much less apply them to enhance a term of

commitment, without the proceeding unconstitutionally prosecuting an incompetent defendant. Defendant cites *Rotherham*'s reminder that "[t]he law has long recognized that it is a violation of due process to prosecute a defendant who is incompetent to stand trial." 1996-NMSC-048, ¶ 13. While Defendant does not argue such a constitutional violation where a *basic* sentence under Section 31-9-1.5 is used to set a term of commitment, he alleges that the corresponding use of an *enhanced* sentence based on aggravating circumstances represents such a violative prosecution because enhancement is inherently punitive. Defendant also quotes our observation in *Rotherham* that a Section 31-9-1.5 "hearing is not a trial to establish criminal culpability." *Id.* ¶ 58. Defendant asserts that "culpability is at the heart of aggravation," but presents no authority from cases involving an incompetent defendant.

{26} We find this line of argument misconstrues and misapplies *Rotherham*. First, the *Rotherham* Court was clear that commitment under Section 31-9-1.5 "serves a regulatory rather than a punitive function" because the state "seeks to treat an incompetent [defendant] and to protect the community from danger." *Id.* ¶ 53 (citing *United States v. Salerno*, 481 U.S. 739, 746, 747 (1987) ("[P]reventing danger to the community is a legitimate regulatory goal.")). Second, the Court found that the NMMIC's requirement of a finding of dangerousness satisfies *Jackson*'s

13

requirement that "'the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.'" *Id.* ¶¶ 41-42 (quoting *Jackson*, 406 U.S. at 738). While, as discussed hereinabove, enhancement was not an issue before the Court, our analysis in *Rotherham* of Section 31-9-1.5 indicates that a term of commitment is neither punitive nor about culpability where it directly serves the proper regulatory purposes. *See id.* ¶ 53 ("[T]he State cannot release into society an incompetent defendant who has demonstrated a capacity for serious, violent conduct.").

{27} Thus, analysis of circumstances surrounding a criminal offense under Section 31-18-15.1 should bear a direct relation to determining dangerousness when applied to commitment under Section 31-9-1.5. *See id.* ¶ 58 (citing *State v. Werner*, 1990-NMCA-019, ¶ 8, 110 N.M. 389, 796 P.2d 610 (advising reading Section 31-9-1.5 in view of "the object sought to be accomplished and the wrong to be remedied")). Where aggravating circumstances bear a direct relation to dangerousness, enhancement of a term of commitment is unrelated to culpability and comports with *Jackson* and *Rotherham*. *See id.* ¶ 53 (stating that a term of commitment "does not inexorably mean the State has imposed punishment").

**c.    Enhancing a term of commitment under Section 31-9-1.5 comports with *Chorney***

{28}    The Court of Appeals in *Chorney* directly addressed a district court's statutory authority to enhance a term of criminal commitment based on habitual offender aggravating circumstances. *See* 2001-NMCA-050, ¶¶ 1-3. The Court held that the habitual offender statute could not be applied under Section 31-9-1.5 as it does not bear a reasonable relation to dangerousness and thus does not serve the legislative purposes underlying the NMMIC. *Id.* ¶¶ 12-13. The Court explained those purposes as being "to protect an incompetent defendant from indefinite and unjust commitment to a mental health institution without due process of law and to protect society from dangerous criminals." *Id.* ¶ 11. In analyzing dangerousness as the "sole reason" for the maximum sentence requirement under the NMMIC, the Court reasoned that a term of commitment "can consist only of basic sentences for the crimes that trigger commitment, and *any enhancements of those basic sentences that are expressly based on inherently dangerous criminal conduct as set out in Section 31-9-1.5(D) or defined in Section 31-9-1.2.*" *Id.* ¶ 14 (emphasis added).

{29}    Defendant argues that the conclusion in *Chorney* regarding enhancements based on dangerousness was dicta, as only the habitual offender enhancement was before the Court. Thus, Defendant alleges, the Court of Appeals in the instant case erred by relying on that reasoning. *See Quintana*, 2019-NMCA-030, ¶¶ 13-14.

15

Defendant also argues that dangerousness cannot be applied both as a predicate finding to criminal commitment and as a basis to increase that commitment. Alternatively, Defendant argues that aggravating circumstances may, as with prior offenses under the habitual offender statute, bear no reasonable relation to dangerousness, and thus aggravating circumstances generally cannot be applied to criminal commitments.

{30}     We agree with the Court of Appeals that the holding in *Chorney* extends to the applicability of enhancements based on inherently dangerous criminal conduct under Section 31-9-1.5. *See id.* ¶ 13 (citing *Chorney*, 2001-NMCA-050, ¶¶ 12, 14). In order to reach its holding regarding the habitual offender enhancement, the *Chorney* Court had to determine first what types of enhancements *could be* applied to serve the purposes of the NMMIC. *See* 2001-NMCA-050, ¶ 14. This analysis was necessary in order for the Court to determine that the inapplicable enhancement was an exception to the legislative purposes of the statute. *See id.* ¶¶ 18, 20. Because this analysis was essential to the court's determination, *Chorney*'s conclusion regarding enhancement based on dangerousness was not dicta, and the Court of Appeals did not err in relying on it. *See Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 22 n.8, 116 N.M. 52, 860 P.2d 182 (citing *Black's Law Dictionary* 454 (6th ed. 1990) (defining dicta in an opinion as language "not essential to determination of the case in hand")).

16

{31} Defendant provides no authority for his claim that dangerousness cannot be used both as a predicate qualification for commitment under Section 31-9-1.5 and as a basis for enhancement of the term of commitment. For this reason, "we presume that no such authority exists" and decline to address this argument. *See State v. King*, 2013-NMSC-014, ¶ 10, 300 P.3d 732; *see also State v. Paul T.*, 1999-NMSC-037, ¶ 27, 128 N.M. 360, 993 P.2d 74 (acknowledging that "arguments not supported by authority need not be addressed").

{32} We also find unavailing Defendant's argument that *Chorney*'s exclusion of the habitual offender enhancement precludes enhancement based on aggravating circumstances. The *Chorney* Court specifically considered whether the Legislature intended the habitual offender statute to be applied under Section 31-9-1.5 "even where its application bears no reasonable relationship with dangerousness as defined in the [NMMIC]." 2001-NMCA-050, ¶ 13. While holding against broad application of the habitual offender statute "in all cases," the Court did not categorically dismiss the use of prior criminal acts to enhance a term of commitment. *Id.* ¶¶ 15-16.

{33} To the contrary, the *Chorney* Court concluded that enhancement of a term of criminal commitment is proper under the NMMIC where "the conduct invoking the enhancement is a specific marker of dangerousness as determined and defined by the Legislature." *Id.* ¶ 21; *see* § 31-9-1.2(D) (defining dangerousness under the

NMMIC). Specific prior criminal acts that would satisfy the habitual offender statute in a criminal proceeding would be applicable under Section 31-9-1.5 *if they bore a direct relation to dangerousness*; equally, specific aggravating circumstances that would satisfy Section 31-18-15.1 in a criminal proceeding would be applicable under Section 31-9-1.5 *if they bore a direct relation to dangerousness*.

### d.     Jury findings of aggravation

{34}    Defendant relies on legislative silence in the NMMIC regarding the jury requirement addressed in *State v. Frawley* to argue that the Legislature did not intend for aggravation to be applied under the NMMIC. 2007-NMSC-057, ¶¶ 20, 25, 143 N.M. 7, 172 P.3d 144 (following *Cunningham v. California*, 549 U.S. 270, 274 (2007) (holding that placing sentence-elevating factfinding within the judge's province violates the Sixth Amendment right to trial by jury)), *superseded by statute on other grounds as recognized by State ex rel. Sugg v. Oliver*, 2020-NMSC-002, ¶ 19, 456 P.3d 1065; *see State v. Rudy B.*, 2010-NMSC-045, ¶ 23, 149 N.M. 22, 243 P.3d 726 (recognizing that "[t]he result in *Frawley* was, as a practical matter, dictated by the Supreme Court's decision in *Cunningham*"). After *Frawley* held Section 31-18-15.1 to be facially unconstitutional, 2007-NMSC-057, ¶ 1, the Legislature revised the aggravation statute in 2009 to clarify a defendant's right to jury determination of aggravating circumstances. *See* § 31-18-15.1(B); *see also State*

18

*v. Radosevich*, 2018-NMSC-028, ¶ 16, 419 P.3d 176 (recognizing the "Sixth Amendment . . . guarantee[] that all facts essential to a defendant's sentence must be determined by a jury" (internal quotation marks and citation omitted)). Defendant argues that the lack of similar revision to the NMMIC regarding the right to jury findings of aggravating circumstances reflects a lack of legislative intent for enhanced sentencing to apply to the NMMIC at all.

{35}   This argument is obviated by our foregoing discussion. First, because the Legislature intended for the potential application of the CSA under the NMMIC, post-*Frawley* revision of Section 31-18-15.1 satisfied that issue and no revision to the NMMIC itself was necessary. Second, since commitment determinations are inherently different from criminal proceedings to render punishment, the Sixth Amendment reasoning in *Cunningham* and *Frawley* does not apply equally to commitment proceedings. *Cf. Rotherham*, 1996-NMSC-048, ¶¶ 53-55. Although here we do not reach the issue of the jury requirement in *Frawley* applying to the NMMIC, we note that Defendant explicitly waived his right to jury determination of aggravation and mitigation.

19

**B.** **Application of Section 31-18-15.1 Under Section 31-9-1.5 Requires Clear and Convincing Evidence That Bears Directly on Dangerousness**

{36} Under Section 31-9-1.5, evidence of aggravating and mitigating circumstances must meet the standard of "clear and convincing evidence" and, as discussed above, must bear directly on "dangerousness." These requirements serve the regulatory goals and legislative purposes of commitment proceedings under the NMMIC. *See Rotherham*, 1996-NMSC-048, ¶¶ 55-56; *Chorney*, 2001-NMCA-050, ¶ 21.

{37} The "clear and convincing evidence [standard] strikes a fair balance between the defendant's interest in avoiding an erroneous deprivation of liberty and the State's interest in treating the defendant, protecting the defendant from himself [or herself], and protecting society in general." *Rotherham*, 1996-NMSC-048, ¶ 56 (emphasis added). The risk of erroneous deprivation of liberty combined with "purposes of rendering punishment" and "the concern of possible risk of error" in a criminal proceeding justifies the heavier standard of beyond a reasonable doubt. *Id.* ¶¶ 54-56 (citing *Addington v. Texas*, 441 U.S. 418, 428-29 (1979)); *see* § 31-18-15.1(A)(2), (B). However, we have recognized that the full force of the concern of erroneous deprivation of liberty is not present where the NMMIC provides additional safeguards and sufficient means by which an error may be corrected. *Rotherham*, 1996-NMSC-048, ¶ 55. "Thus, the concern of possible risk of error that

20

warrants a higher standard of proof for criminal prosecution does not apply here."

*Id.*

{38} The instant case offers a useful model for the proper application of Section 31-18-15.1 to enhance a term of commitment under Section 31-9-1.5. The district court's order of commitment identifies that clear and convincing evidence supports all requisite findings for the corresponding term of commitment. The order's findings include those meeting the requirements for commitment under Section 31-9-1.5(D): (1) Defendant committed the underlying felony offense of murder in the second degree, (2) Defendant remained incompetent to proceed to trial, and (3) Defendant remained dangerous as defined by Section 31-9-1.2(D). The order's findings also include those meeting the requirements for aggravation when Section 31-18-15.1 is applied under Section 31-9-1.5: aggravating circumstances that relate to the dangerousness of Defendant, including clear and convincing evidence of brutality, viciousness, and threat to community safety.

## III.   CONCLUSION

{39} We conclude that a term of commitment under Section 31-9-1.5(D) may include an enhancement due to aggravating circumstances which relate to a defendant's dangerousness and that the application of Section 31-18-15.1 requires

21

clear and convincing evidence. Accordingly, we affirm Defendant's enhanced term of commitment.

**{40}** **IT IS SO ORDERED.**


_____

**C. SHANNON BACON, Justice**


**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Chief Justice**


_____

**BARBARA J. VIGIL, Justice**


_____

**DAVID K. THOMSON, Justice**